Michael R. Rochelle
State Bar No.17126700
Chris B. Harper
State Bar No. 09025500
Eric M. Van Horn
State Bar No. 24051465
ROCHELLE MCCULLOUGH LLP
325 N. St. Paul, Suite 4500
Dallas, Texas 75201
P: (214) 953-0182
F: (214) 953-0185

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS-IN-POSSESSION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| REDWINE RESOURCES, INC. | § | CASE NO. 10-34041 |
| BADGER DRILLING COMPANY, LLC | § | CASE NO. 10-34046 |
| WHITE OAKS RESOURCES, LLC | § | CASE NO. 10-34054 |
| REDWINE OIL AND GAS PROPERTIES, LLC | § | CASE NO. 10-34052 |
| REDWINE ROCKIES, LLC | § | CASE NO. 10-34053 |
| REDWINE OIL AND GAS, LLC | § | CASE NO. 10-34050 |
| REDWINE AVIATION, INC. | § | CASE NO. 10-34047 |
| REDWINE KINTA RANCH, LLC | § | CASE NO. 10-34051 |
| | § | |
| DEBTORS | § | CHAPTER 11 |
| | § | |
| | § | JOINT ADMINISTRATION |
| | § | REQUESTED |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL PURSUANT
TO 11 U.S.C. § 363; (II) GRANTING ADEQUATE PROTECTION TO
BANK OF AMERICA, N.A. PURSUANT TO 11 U.S.C. §§ 361 AND 363; AND (III)
<u>SCHEDULING FINAL HEARING PURSUANT TO BANRKUPTCY RULE 4001(b)</u>**

**TO THE HONORABLE U.S. BANKRUPTCY JUDGE:**

The above-referenced debtors and debtors-in-possession (the "<u>Debtors</u>") in the above-captioned cases, move the Court (the "<u>Motion</u>"), pursuant to Sections 361, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.* (the "<u>Bankruptcy Code</u>"), for entry of an

1

interim order in the form attached hereto as Exhibit A (the "Proposed Interim Cash Collateral Order"): (I) authorizing the Debtors to use Cash Collateral (as that term is defined by Section 363(a) of the Bankruptcy Code); (II) granting adequate protection to Bank of America, N.A., the Debtors' prepetition secured lender; and (III) scheduling a final hearing on the Debtors' use of Cash Collateral pursuant to Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and would show the Court as follows:

## I.
## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2), and venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## SUMMARY OF RELIEF REQUESTED

2. The Debtors request authority to use Cash Collateral pursuant to Section 363 of the Bankruptcy Code and to grant Bank of America, N.A., ("BofA") adequate protection pursuant to Sections 361 and 363 of the Bankruptcy Code.

3. The Debtors are informed that BofA consents to the Debtors' use of Cash Collateral as provided in this Motion.

4. Pursuant to Rule 4001(b)(1)(B) of the Bankruptcy Rules, the Debtors provide the following summary of the key aspects of the relief sought:

>  (a) Name/Address of Each Entity with an Interest in Cash Collateral: BofA, Mail Code: TX1-492-14-11, 901 Main Street, Dallas, Texas 75202, under, *inter alia,* (i) that certain Loan Agreement dated April 30, 2003 (the "2003 Loan Agreement"), as amended by, *inter alia,* a First Amendment to Loan Agreement dated as of April 30, 2005 (the "2005 Amendment"), as amended by a Second Amendment to Loan Agreement dated as of September 23, 2006 (the "2006 Amendment"), as amended by another Second amendment to Loan Agreement dated as of November 15, 2007 (the "2007 Amendment"), as amended by the

Amended and Restated Credit Agreement dated as of September 9, 2008 (the "2008 Amended and Restated Credit Agreement"), as amended by the First Amendment and Forbearance to the Credit Agreement dated as of September 18, 2009 (the "2009 Amendment and Forbearance"), and as amended by the First Amendment to First Amendment and Forbearance to the Credit Agreement and Consent dated as of March 25, 2010 (the "2010 Amendment and Forbearance") (collectively, the "Pre-Petition Credit Agreement").  The Pre-Petition Credit Agreement is secured by all or substantially all of the Debtors' assets pursuant to, *inter alia,* (i) deeds of trust in favor of BofA in the entire Mineral Interest of Borrower and its Subsidiaries in the Mortgaged Properties filed in the locations as the April 2003 Mortgages (all terms defined by the 2008 Amended and Restated Credit Agreement") (the "2008 Mineral Interest Mortgages"); and (ii) the assignment and grant of security interest in all property of the Debtors (and non-debtor Gary Redwine Oil & Gas, LLC) dated September 18, 2009 (the "2009 Security Agreement").[1]

(b)   Name & Address of Entities in Control/Possession of Cash Collateral: Redwine Resources, Inc., 8214 Westchester Drive, Suite 740, Dallas, Texas 75225; Redwine Oil & Gas Properties LLC (same address); Redwine Rockies, LLC (same address); Badger Drilling Company, LLC (same address); and BofA, (address provided above), pursuant to the 2009 Amendment and Forbearance which authorizes BofA to transfer all available balances from certain of Debtors' accounts and hold such amounts in the Redwine Cash Collateral Account (as defined by the 2009 Amendment and Forbearance).

(c)   Purposes for the Use of Cash Collateral:  The Debtors propose to use Cash Collateral, in the amount of approximately $988,644.00 for the next 13 weeks under the Cash Collateral Budget (defined below), during these chapter 11 cases:

(i) to preserve the value of the estates' assets that serve as collateral for amounts owing to BofA (all such collateral, including Cash Collateral, and the income, proceeds, products, rents or profits thereof referred to herein as the "Collateral");

(ii) to preserve the value of the estates' assets in which BofA does not hold validly-existing security interests or liens, if any, or in relation to which BofA's security interests or liens are avoided (the "Unencumbered Assets");

(iii) to administer the cases, including without limitation, overhead (such as labor and benefits, rent, utilities, and other ordinary and necessary operating expenses), fees and expenses incurred by professionals employed by the Debtors (subject to court approval), and all statutory fees due the U.S. Trustee or the Court (collectively, "Case Administration Expenses"); and

---

[1] The Proposed Interim Cash Collateral Order contains a detailed list of the security documents.

(iv) to assist in the marketing and sale of one or more of the Debtors' assets.

(d)   Material Terms:

(i) The Debtors' proposed initial 3-month budget (the "Cash Collateral Budget").² Subject to allowable variances during the 3-month period (the "Forecast Period") of ten percent (10%) on an overall cumulative basis, the Debtors propose to restrict use of Cash Collateral to the items set forth in the Budget.

(ii) The Debtors further propose that their authority to use Cash Collateral the as set forth herein shall immediately terminate upon the earliest to occur of any of the following events (each a "Termination Event"):³

(A)  5:00 p.m. on the Maturity Date or such later date as may be agreed upon in writing by the Debtors and BofA;

(B)  the business day after the date on which any of the Debtors fails to comply with any terms of the Proposed Interim Cash Collateral Order;

(C)  entry of an order, without the prior written consent of BofA, (i) converting any of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code; (ii) dismissing any of these chapter 11 cases; (iii) appointing a trustee under chapter 7 or chapter 11 of the Bankruptcy Code or appointing an examiner with expanded powers (powers beyond those set forth in sections 1106(a)(3) and (4) in any of these chapter 11 cases); (iv) reversing, vacating, or otherwise amending, supplementing or modifying the Proposed Interim Cash Collateral Order; or (v) granting relief from the automatic stay to any creditor (other than BofA) holding or asserting a lien in collateral of BofA or a reclamation claim;

(D) entry of an order for (i) the invalidation, subordination, or other challenging of the Superpriority Claims or Adequate Protection Liens granted to BofA under the Proposed Interim Cash Collateral Order or (ii) any relief under Section 506(c) of the Bankruptcy Code with respect to the Pre-Petition Collateral;

(E) the filing of any application by any of the Debtors for entry of an order approving use of Cash Collateral (other than application related to the Proposed Interim Cash Collateral Order or any final cash collateral order as same may be extended from time to time), or any financing or loan

---

² The Cash Collateral Budget is not yet final. When finalized, the Cash Collateral Budget will be filed promptly.

³ Any capitalized terms not defined in this motion shall have the meaning ascribed to them in the Proposed Interim Cash Collateral Order.

secured by liens, which are senior, *pari passu,* or junior to BofA's liens on the Pre-Petition Collateral, without the prior written approval of BofA;

(F) the closing of a sale pursuant to entry of an order approving the sale of substantially all of the Debtors' assets, whether done pursuant to one transaction or a series of transactions;

(G) the filing by the Debtors of a motion in these chapter 11 cases without BofA's prior written consent: (i) to obtain financing under section 364 of the Bankruptcy Code from any person or entity other than BofA; (ii) to grant any lien or offering any collateral; (iii) to recover from any portion of the Pre-Petition Collateral any costs or expenses of preserving or disposing of collateral under section 506(c) of the Bankruptcy Code.

(iii) The Debtors and all parties in interest will have ninety (90) days from the Petition Date (the "Challenge Deadline" or "Investigation Period") to challenge the validity, perfection, or priority of the security interests and liens of BofA. Failure to timely challenge will, *inter alia*, deem BofA's liens on the pre-petition collateral as legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable.

(iv) The Debtors will be prohibited from using Cash Collateral to object, contest, or challenge the validity, extent, perfection, priority, or enforceability of the Pre-Petition Credit Agreement or any liens or security interests with respect thereto;

(e) Adequate Protection: The Debtors will provide BofA adequate protection in the form of:

(i) To the extent of any Diminution in Value[4], BofA shall have valid and perfected additional and replacement security interests in, and liens upon (the "Adequate Protection Liens"), all of the Debtors' right, title and interest in, to, and under (A) all assets in which BofA holds validly perfected liens as the Petition Date; and (B) all of the Debtors' now owned and after-acquired real and personal property, assets and rights, of any kind or nature, wherever located, including, without limitation contracts, property, plant, equipment, general intangibles, documents, instruments, interests in leaseholds, patents, copyrights, trademarks, trade names, and all other intellectual property, capital stock of subsidiaries, cash, and cash collateral of the Debtors (whether maintained with BofA or other financial institutions), any investment of such cash and cash collateral, inventory, accounts receivable, any cause of action excluding avoidance or other actions arising under chapter 5 of the Bankruptcy Code, and the proceeds thereof, any right to payment whether arising before or after the Petition Date, and the proceeds,

---

[4] Defined in the proposed order as any decrease in the value of BofA's interests in the Pre-Petition Collateral on account of the Debtors' use of the Pre-Petition Collateral and any other decrease in value of such interests on account of Sections 362, 363 or 364 of the Bankruptcy Code.

5

products, rents and profits of all of the foregoing (collectively, the "Adequate Protection Collateral").

(ii) To the extent of any Diminution in Value, BofA shall have an allowed superpriority administrative expense claim as provided in and to the full extent allowed by Sections 503(b) and 507(b) of the Bankruptcy Code and otherwise (the "Superpriority Claims"). The Superpriority Claims shall be allowed claims against each Debtor (jointly and severally).

(iii) As additional adequate protection in accordance with Section 363(e) of the Bankruptcy Code, and in consideration for the Debtors' use of Cash Collateral, the Debtors hereby release, acquit, and forever discharge BofA and its directors, officers, representatives, agents, and attorneys from any and all claims, counterclaims, demands, controversies, costs, contracts, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, actions, and causes of action of any nature, type or description, whether at law or equity, by common law or statute, in contract, for, or otherwise, known or unknown, asserted or unasserted, or suspected or unsuspected.

(iv) Pursuant to the Debtors' pre-petition ordinary business practices and the terms of the Pre-Petition Credit Agreement, the Debtors shall deliver the following weekly and monthly reports to BofA and its counsel following entry of the Proposed Interim Cash Collateral Order:[5]

13-Week Forecast;

Cash Flow Variance Report;

Budget Variance Report;

Management and Operations Report;

Flash Operation Report;

Accounts Payable Aging Report;

Monthly Financial Statements;

12-Month Projections; and

such other reports as may be required by BofA pursuant to the terms of the Pre-Petition Credit Agreement.

(v) The Debtors shall immediately make available to BofA or any of its agents (including professionals) supporting documentation for all receipts and

---

[5] Capitalized terms used in this Paragraph shall have the meanings ascribed to them in the Pre-Petition Credit Agreement.

expenditures, including, but not limited to, bank statements, contracts, invoices, copies of checks and general ledgers. Failure to provide these documents and reports shall be a Termination Event as defined herein.

## III.
## FACTUAL BACKGROUND[6]

**A. The Debtors' Chapter 11 Filings and Businesses Generally.**

5. On June 4, 2010 (the "Petition Date"), the Debtors commenced their cases under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate and continue to manage their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. By virtue of the provisions of the Bankruptcy Code, as debtors-in-possession, the Debtors have the statutory responsibilities and duties of a trustee, except where specifically excused. *See* H.R. § 200, H.R. Rep. No. 595, 95th Cong., 1st Sess. 404 (1977). As such, the Debtors are serving in the capacity of a Chapter 11 trustee as if appointed by order of this Court.

6. The Debtors operate businesses related to the oil and gas industry and employ approximately 22 employees. Generally, the Debtors are in the business of acquiring and investing in both producing and non-producing leasehold and mineral interests across the United States, with a primary focus in Colorado, Indiana, New Mexico, Oklahoma, Texas, and Wyoming. The Debtors acquire interests in targeted areas where the geology is defined and productive, and in areas established operators have targeted, or are reasonably anticipated to soon target for development, based upon known drilling trends. After acquisition of these interests, the Debtors participate as working interest owners in the drilling of wells on its leases and/or repackage the leases for sale to operators or investors.

**B. Events Leading to Chapter 11**

---

[6] The Declaration of Lyndon James in Support of Debtors' Voluntary Petitions Under Chapter 11 of Title 11 of the United States Code and First Day Motions (the "James Declaration") contains a more extensive statement of background facts (including a detailed account of the various financial difficulties that led to the filing of this Chapter 11 case), and provides support for the factual matters discussed herein.

7

7. In response to significant decline in the price of natural gas, and a slowdown of drilling activity by various oil companies, the Debtors have suffered substantial decreases in production-related revenue. Further, the decrease in the price of natural gas combined with the collapse in the credit markets, devastated the Debtors' ability to raise capital to further develop these properties. While certain restructuring initiatives have been successful in reducing costs, ultimately chapter 11 proceedings are necessary to address the Debtors' issues through a sale of assets. Accordingly, on the Petition Date, the Debtors filed these cases.

## IV.
## BASIS FOR RELIEF REQUESTED

8. The statutory bases for the relief requested are Sections 361 and 363 of the Bankruptcy Code, and such relief is warranted pursuant to Rule 4001(b) of the bankruptcy Rules.

9. Section 363 defines "cash collateral" as

> "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents or profits of property . . . subject to a security interest as provided in section 552(b) of [the Bankruptcy Code], whether existing before or after the commencement of a case under [the Bankruptcy Code]."

11 U.S.C. § 363(a). Under Section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral only if either "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use … in accordance with the provisions of this section." *Id.* § 363(c)(2).

10. Separately, Section 363(e) of the Bankruptcy Code provides that, on request of any entity that has an interest in property proposed to be used by a debtor in possession, the court, with or without hearing, "shall prohibit *or condition* such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e) (emphasis added).

8

11. As debtors-in-possession, the Debtors need immediate access to the cash in their operating accounts, which may constitute the Cash Collateral of BofA, in order to pay its employees, maintain services, operate and preserve their businesses, and meet their administrative responsibilities in these chapter 11 cases. The Debtors have no source of unencumbered cash with which to operate their businesses, and therefore Cash Collateral must be used.

12. As of the filing of this Motion, the Debtors have discussed the use of Cash Collateral with BofA, which does not oppose the Debtors' use of Cash Collateral in accordance with the Budget, subject to negotiating an agreed order regarding same.[7]

13. The Debtors and BofA are parties to the above referenced Pre-Petition Credit Agreement. The current balance of the Pre-Petition Credit Agreement is approximately $42,304,522.53, which is secured by first liens on all or substantially all of the Debtors' assets.

14. The Debtors propose to use and spend Cash Collateral on an interim basis pending final hearing on the Motion. The Debtors' proposed Cash Collateral Budget is attached hereto as Exhibit B. Further, the Debtors propose to provide adequate protection to BofA in the form of Replacement Liens, a super-priority administrative expense claim, weekly reports detailing the use of Cash Collateral, maintenance of insurance and timely payment of all postpetition taxes and costs in relation to the Collateral in the ordinary course of the Debtors' businesses.

15. The use of Cash Collateral by the Debtors is necessary on an emergency, interim basis in order to avoid an interruption of Debtors' businesses and to avoid imminent, irreparable

---

[7] The Debtors and BofA are continuing to negotiate regarding the terms of the Proposed Interim Cash Collateral Order. While the Proposed Interim Cash Collateral Order reflects the most current status of the negotiations, there may be additional modifications and the Debtors and BofA reserve the right to present a modified order should the need arise.

harm to their estates that would result from, *inter alia*, failing to pay wages and other basic expenses of day-to-day operations, some of which may create further liens against the Debtors' real and personal property.

16. The terms and conditions of the Proposed Interim Cash Collateral Order are fair and reasonable, and reflect the exercise of the Debtors' prudent business judgment consistent with the fiduciary duties of a debtor-in-possession.

## V.
## IMMEDIATE AND IRREPARABLE HARM

17. Bankruptcy Rule 4001(b)(2) generally precludes the Court from conducting a final hearing on a motion for authorization to use Cash Collateral earlier than 15 days after service of the motion, except to the extent necessary to prevent "immediate and irreparable harm." The relief sought here is essential to the Debtors' efforts, without it, they will suffer immediate and irreparable harm to maximizing the value of their estates. Absent the cash to operate, the Debtors cannot carry on their businesses on a going-concern basis and will be prevented from paying, *inter alia*, employees, insurance obligations, and other operating expenses that are critical to the Debtors' businesses. Debtors seek the relief requested in this Motion because, without it, all creditors and parties-in-interest will be harmed by the rapid diminution of going concern value of the Debtors' estates.

18. In light of the foregoing, Debtors submit that the relief requested is essential for the Debtors' reorganization, represents an exercise of the Debtors' sound business judgment, is in the best interests of the Debtors' estates and creditors, and is necessary to prevent immediate and irreparable harm.

# VI.
# NOTICE

19. Bankruptcy Rules 4001 and 9014 generally require that any proceeding to use Cash Collateral be made only upon motion and on notice to any other entity that has an interest in the Cash Collateral sought to be used, as well as notice to any official committee and such other entities as the Court may direct.

20. Notice of this Motion is being given concurrently with the filing thereof to the parties listed on the attached service list which includes the Office of the United States Trustee, BofA, and each of the Debtors' twenty (20) largest unsecured creditors. No official committee or trustee has been appointed in these cases. Accordingly, the Debtors submit that, under the circumstances, no further or other notice is necessary, other than with respect to a final hearing on this matter when docketed by the Court.

**WHEREFORE, PREMISES CONSIDERED,** the Debtors request that the Court enter an order, substantially in the form attached hereto as Exhibit A, (I) authorizing the Debtors to use Cash Collateral in accordance with the Proposed Interim Cash Collateral Order and attached budget; (II) finding that BofA is adequately protected by the Debtors' offers of adequate protection; (III) following appropriate notice and final hearing in this matter, authorizing continued use of Cash Collateral on such terms as the Court may impose or to which BofA may consent; and (IV) providing the Debtors with such alternative and further relief to which they may show themselves to be justly and equitably entitled.

Respectfully submitted this 4th day of June, 2010.

/s/ *Eric M. Van Horn*
Michael R. Rochelle
State Bar No. 17126700
Chris B. Harper
State Bar No. 09025500
Eric M. Van Horn
State Bar No. 24051465
ROCHELLE MCCULLOUGH LLP
325 N. St. Paul, Suite 4500
Dallas, Texas 75201
(214) 953-0182 Telephone
(214) 953-0185 Facsimile

PROPOSED ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESSION

## CERTIFICATE OF CONFERENCE

The undersigned certifies that Michael R. Farquhar and J. Frasher Murphy, counsel for Bank of America, N.A., were contacted via email and telephone regarding the relief requested in this Motion. As explained in the Motion, an agreement has been reached, but may be revised before a hearing on the Motion as the parties continue to negotiate.

/s/ *Eric M. Van Horn*
Eric M. Van Horn